No. 82-294

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA, ex rel.,
PATRICK McKENDRY,

             Petitioner,

    -vs-

THE DISTRICT COURT OF THE FOURTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF LAKE,

             Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

        For Petitioner:

                K. M. Bridenstine, Polson, Montana

        For Respondent:

                Richard P. Heinz, County Attorney,
                Polson, Montana

---

                        Submitted:    September 9, 1982

                        Decided:    November 15, 1982

Filed: NOV 1 5 1982

Thomas J. Kearney
                                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Petitioner McKendry seeks a writ of supervisory control to issue to Judge Douglas Harkin of the Fourth Judicial District directing him to withdraw from all further participation in the above-entitled cause. We deny the petition.

Respondent judge had jurisdiction of "State v. Patrick McKendry," a Lake County case, by virtue of respondent's criminal trial jurisdiction in Lake County in 1982. Because of a heavy trial schedule and case load, respondent issued an order on June 9, 1982, which included the following:

> "The undersigned, because of the press of other scheduled trials, hereby invites the Honorable Robert M. Holter to assume jurisdiction in the above entitled cause."

On June 14, 1982, Judge Holter assumed jurisdiction, but on June 18, 1982, defendant moved for substitution of another judge for Judge Holter. Thereupon, respondent invited Judge Nat Allen to assume jurisdiction, which Judge Allen did on June 25, 1982.

On June 30, 1982, the State moved for a substitution of another judge for Judge Allen. On July 29, 1982, respondent issued the following order:

> "The undersigned, no longer experiencing scheduling difficulties that were present on June 9, 1982, hereby resumes his original jurisdiction in the Cause and sets Defendant's Motion for Suppression of Evidence for hearing at 1:00 p.m. on August 17, 1982.
>
> "It is further ordered that this case is set for trial on September 1, 1982, at 10:00 a.m. in the Lake County Courthouse, Polson, Montana."

On August 9, 1982, defendant McKendry petitioned this Court for a writ of supervisory control directing respondent

-2-

to relinquish all further jurisdiction in the case. Respondent answered, arguing that respondent could reassume jurisdiction when the reason for disqualification ceased to exist.

The issue on appeal is: May the respondent judge reassume jurisdiction when the cause for which he voluntarily relinquished jurisdiction is no longer present?

Petitioner argues that by the June 9 order, respondent was divested of all jurisdiction in this matter and may not reenter the case. Petitioner also contends that by virtue of section 3-1-802, MCA, only Judge Holter, as the first judge disqualified, could call in subsequent judges and respondent was without authority to so act.

Respondent argues that section 3-1-802, MCA, is not controlling and that petitioner's action is merely a delay tactic. Neither counsel have referred us to any dispositive Montana cases.

We do not find section 3-1-802, MCA, to be applicable to Judge Harkin's June 9 and July 29 orders. That statute provides in part:

> "A motion for substitution of a judge shall be made by filing a written motion for substitution reading as follows:
>
> "'The undersigned hereby moves for substitution of another judge for Judge _____ in this cause.' The clerk of court shall immediately give notice thereof to all parties and to the judge named in the motion. Upon filing this notice, the judge named in the motion shall have no further power to act in the cause other than to call in another judge, which he shall do forthwith, and to set the calendar.
>
> "The first district judge disqualified shall have the duty of calling in all subsequent district judges."

It is clear that this statute speaks to the situation where one party moves for a substitution of judges. The statute also states that upon the filing of the clerk's notice thereof, the judge named in the _motion_ shall have no further power to act. With regard to Judge Harkin, however, there was no motion for substitution but simply Judge Harkin's order inviting Judge Holter to assume jurisdiction because Judge Harkin was confronted with the press of other scheduled trials at that time. Thus, we find that section 3-1-802, MCA, does not address the present circumstances and the statement therein that the judge shall have no further power to act is inapplicable.

The rule of law governing this case is found in the following authority:

> ". . . In view of the general control of a court over its orders and decrees rendered at the same term, most of the cases are consistent with the doctrine that, absent statutory provision to the contrary, the bare fact of there having been a judicial order or determination of a judge's disqualification does not prevent his reassuming full jurisdiction by timely order showing that in fact there was no disqualification or that the same has been removed. . ." (Citations omitted; emphasis added.) 46 Am.Jur.2d Judges, § 234 at page 256 (1969).

In Flannery v. Flannery (1969) 203 Kan. 239, 452 P.2d 846, the original district judge disqualified himself from the plaintiff's divorce case and another judge decided the case. Subsequently, plaintiff wife filed a motion to modify the divorce decree and the original judge determined that he would hear the motion, since the issues upon which he felt disqualified had been resolved. This action was affirmed on appeal, the court rejecting plaintiff's argument that once a judge has disqualified himself, his disqualification per-

sists throughout all subsequent proceedings. See also, In Re Brevard County Grand Jury (Fla.App. 1968), 206 So.2d 398 (previously disqualified judges on a grand jury presentment had jurisdiction to hear contempt matters relating to testimony taken in connection with the presentment because the basis of the prior disqualification had been removed), and see generally, 162 ALR 641 (1946).

In view of these authorities we hold that respondent may reassume jurisdiction of this case.

The dissent in this case places sole reliance on State ex rel. Moser v. District Court (1944), 116 Mont. 305, 151 P.2d 1002, where it was held that when a judge relinquished jurisdiction over a cause he could not later cite Moser for contemptuous actions allegedly arising out of the same case. We distinguish Moser on two grounds. First, the order requesting another judge to assume jurisdiction there did not give any reasons for the transfer of the case as was done here. For reasons of efficient judicial administration, when the basis for relinquishing jurisdiction of a cause disappears, the original judge should be able to resume hearing the case. Here, respondent's pressing workload dissipated and respondent should be able to reassume jurisdiction of this case. When the reason for a rule ceases, so should the rule itself, section 1-3-201, MCA.

Secondly, here there is no issue of two judges having jurisdiction over the same case as there was in Moser. There, Judge King had assumed jurisdiction of the case and Judge Hattersly attempted to hold contempt proceedings and enter judgment against Moser for conduct allegedly arising out of the same case. Here, both judges who were called in

-5-

(Holter and Allen) were disqualified, leaving respondent with sole jurisdiction by virtue of the July 29 order.

Petition denied.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:

I dissent to the denial of a writ of supervisory control in this case.  I would accept jurisdiction, grant supervisory control, and direct the district judge to call in another district judge for further proceedings in the cause involving the petitioner.

I would grant the writ of supervisory control not because I have any fear that the petitioner could not receive a fair trial from the presiding district judge, the Honorable Douglas G. Harkin.  Undoubtedly Judge Harkin assumed, since he had removed himself voluntarily from the case, and was not disqualified by affidavit or motion, that he could reassume jurisdiction at any time.  Unfortunately, his action in reassuming jurisdiction runs contra to what was, until now, the prevailing rule with respect to the jurisdiction of a district judge who voluntarily removes himself from the cause.

This precise case arose in 1944, in State ex rel. Moser v. District Court (1944), 116 Mont. 305, 151 P.2d 1002.  In that case the late Judge Hattersley entered the following order in the cause over which he was presiding:

> "'The undersigned Judge of the Ninth Judicial District, hereby requests the HONORABLE DEAN KING, Judge of the Eleventh Judicial District, to hold court for the undersigned Judge, to assume jurisdiction and try and determine all orders to show cause, motions and demurrers, and to hear and finally determine the issues in the above entitled action.'"  116 Mont. at 312.

In this case, Judge Harkin did exactly the same thing. He entered an order in this cause on June 9, 1982, saying:

> "The undersigned, because of the press of other scheduled trials, hereby invites the Honorable Robert M. Holter to assume jurisdiction in the above-entitled cause."

-7-

In the Moser case, supra, this Court held that the voluntary act of Judge Hattersley in calling in another judge to assume jurisdiction deprived Judge Hattersley of jurisdiction and he was thereafter precluded from handling any matter in connection with the cause from which he had withdrawn. There it was contended that Judge Hattersley did not disqualify himself, but rather had simply called in another judge for a particular purpose. That is also the argument that is being made here. This Court disposed of that argument in Moser as follows:

> "In opposition to this view it is contended in effect by counsel for Judge Hattersley that his order did not disqualify him; that there is a material difference between the judge of a district calling in a judge from another district pursuant to the provisions of section 9008, Revised Codes, to try a case for the judge making the call, and disqualification of a judge by a litigant filing an affidavit of disqualification on account of prejudice pursuant to subsection 4 of section 8868, Revised Codes. It is our view that there is no material difference between a voluntary disqualification of a judge and disqualification by the affidavit of prejudice.. . . Jurisdiction of a cause cannot be in two judges at the same time when the cause is in a court over which a single judge presides. What is jurisdiction? Webster's New International Dictionary defines jurisdiction as 'legal power to interpret, and administer law in the premises.' Vol. 14 of Am. Jur., page 363, among other definitions, says it is 'the right to adjudicate concerning the subject matter of a given case,' and again the same authority says it is 'the power to render the particular judgment in the particular case.'" 116 Mont. at 313-314, 151 P.2d at 1006.

This Court then went further and stated in the Moser case:

> ". . . Where, as in the instant matter, a trial judge on his own motion called in another judge, neither constitutional nor statutory provisions enumerate any powers reserved by the judge who issues the call, but by analogy and by necessity we think that there could be no more power left in the judge who makes the call voluntarily in the one case than if he were deprived of jurisdiction by the filing of an affidavit of prejudice. We therefore hold that Judge Hattersley had no jurisdiction over the case of Gibbs v. Fuller at the time the alleged contempt occurred . . ." 116 Mont. at 314, 151 P.2d at 1007.

-8-

An analysis of the facts in this case show why it is important to preserve the idea of a single judge having jurisdiction of a cause at any one time in the circumstances presented here. When Judge Holter assumed jurisdiction, one of the parties disqualified him by filing a motion for substitution. Thereafter, the Honorable Nat Allen of the Fourteenth Judicial District was called in, and thereupon he was disqualified by the other party upon a motion for substitution. It could not be seriously contended that during the times that Judge Holter and Judge Allen were in jurisdiction, that Judge Harkin could return to the case simply by reassuming jurisdiction of the cause. In the same way, he is precluded from further acting in this case now, except to call in another judge.

The majority purport to distinguish the rule from Moser, claiming different circumstances dictated the decision in Moser. There can be no distinction. In Moser, the district judge voluntarily gave up jurisdiction; here the district judge voluntarily gave up jurisdiction. The majority are akin to the populace that could not see that the emperor had no clothes; a child could speak the obvious. A better jurisprudential step would be for the majority candidly to reverse Moser than to skirt the issue.

Adherence to the rules with respect to disqualification would make for orderly handling of causes and avoid jurisdictional disputes. It is my opinion that we should follow the established law in this case because this decision is going to cloud the jurisdictional right of the judge called into a case when the presiding judge acts upon a voluntary removal. We should respect the prior decision in Moser.

_____
John C. Shuly
Justice

-9-

Mr. Justice Daniel J. Shea, dissenting:

I join in the dissent of Justice Sheehy. Although the wording in the order in this case can be distinguished from that in State ex rel. Moser v. District Court, supra (cited and quoted by Justice Sheehy), the simple fact is that Judge Harkin, in calling in a judge from outside the district, did invite that judge to assume jurisdiction and that judge did assume jurisdiction. The spirit of the Moser decision should control, and this means that Judge Harkin lost jurisdiction after the judge he invited to assume jurisdiction did in fact assume jurisdiction. The reason for doing so should not control the question of whether Judge Harkin divested himself of jurisdiction.

The precedent started by the majority here is not a healthy one.

_____
                        Justice

-10-